(70 App. Div. 517.)

## DOLGE v. DOLGE.

## HEKKING et al. v. MILLS et al.

(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

LABORERS—PREFERENCE—WAGES—INCOMPLETE GIFT.

> Sums credited in pass books of employés, according to rules therein printed, for distribution of a share of the earnings of the business over and above their wages, reciting that it was discretionary with the employer to decide how much of such earnings should be set aside for such distribution, and that all such provisions were voluntary, and did not confer any legal right or impose any legal duty, are, in the absence of any setting aside of a sum on which the employés can draw, merely an incomplete gift, and not wages, within Labor Law (Laws 1897, c. 415) § 8, providing that on appointment of a receiver for an employer wages of employés shall have a preference.

Appeal from special term, Herkimer county.

In the matter of the claims of A. M. Hekking and others against Albert M. Mills, receiver of Alfred Dolge & Son, in action by Rudolf Dolge against Alfred Dolge to dissolve partnership. From order refusing to confirm report of referee, claimants appeal. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

John F. Wilson, for appellants.

William P. Quin, for respondent.

DAVY, J. This action was commenced to dissolve the copartnership between plaintiff and defendant, who were engaged in the manufacture of felt, under the firm name of Alfred Dolge & Son. A judgment was entered on the 2d day of May, 1898, dissolving the copartnership and appointing a permanent receiver, with the usual powers and duties as such. By the provisions of said judgment, a referee was appointed to receive claims against the funds of the copartnership, to take proofs concerning the same, to ascertain as to the validity and amounts of such claims, and to report thereon with his proceedings to the court. There were a number of claims presented by the employés of the firm, some of whom had worked for Alfred Dolge prior to the formation of said firm. A preference was sought upon the ground that the claims represented wages for labor performed. The receiver disputed all of these claims and the claimants' right to a preference. It was agreed between the attorneys for the claimants and the receiver that the claims of the appellants should be reported upon by the referee, and the decision of the court obtained thereon, so that the rules applicable to similar claims might be ascertained and determined. The referee reported that the appellants were unpreferred creditors, under the so-called "Laws of the House of Dolge," for the following amounts: Adrian M. Hekking, insurance, $244.96, endowment, $102.77; T. Jefferson Abrams, endowment, $106.20; Adelbert House, endowment, $518.01. The total claims presented by the appellants and other employés amounted to the following sums: Pension, $10,000; insurance, $3,600; endowment, $5,500. The special term refused to confirm the report of the referee as to there being any indebtedness,

and decided that the claimants were not creditors of the firm, upon the ground that they did not have enforceable claims against Alfred Dolge or the said copartnership firm. From that decision and the order of the court entered thereon the claimants appealed to this court.

The principal questions presented upon this appeal arise under the title printed on the first page of the employés' pass book, as follows: "System of Distribution of Earnings for the Employés of Alfred Dolge." In the year 1874, Alfred Dolge, then being engaged in the manufacture of felt, established a scheme known as the "Earnings Division Account," and as a part of this scheme he made certain rules and regulations as to what employés should be entitled to receive and share in the benefits of the said earnings division account. In 1886 he introduced and made a part of the earnings division account a feature known as "Life Insurance and Deposit Benefits." In 1890 the feature of "Endowment Benefits" was introduced, and made a part of the earnings division account. Each pass book contained a "Preamble," which was followed by the "Pension Law," "Insurance Law," and "Law of Endowment." Upon placing the name of the employé upon the roll of the earnings division account he was given a pass book, in which was recorded the first payment, and the year he entered the service. This book contained the printed rules and regulations for the distribution of earnings, and the provisions were classified under headings called the "Pension Law," "Insurance Law," and "Law of Endowment." There was also entered on this book the amount that was placed to his credit on the several accounts, and each year the pass book was called in, and the separate amounts were added. After the amounts were entered, the pass book was returned to the employé. A provision contained in each one of the so-called "Pension," "Insurance," and "Endowment Laws" reads as follows:

"It is distinctly understood that all and every of the provisions of this law are voluntary on behalf of said House of Alfred Dolge, and that this law does not, nor do any of the provisions herein contained, confer any legal right or create any legal right in favor of any employé of said house mentioned herein, or of any person or persons whomsoever, nor any legal liability on behalf of said House of Alfred Dolge, or of said Alfred Dolge, either in law or in equity."

The appellants contend that, while the offers were voluntary on the part of Dolge, and in and of themselves have no binding force, yet, when accepted, acted upon, and complied with by the employés, they become binding upon Dolge, and when the promised credits were actually given upon the pass books the employés had a vested right in the sum or sums so created, which should be enforced in these proceedings. We are of the opinion that the contention of the appellants is not well founded. This plan, as adopted by Dolge, did not constitute a binding agreement between him and his employés. It was simply a benevolent plan proposed by him, and it was solely within his power and discretion to carry it out or not. It was expressly agreed between him and his employés that the agreement did not confer any legal right in favor of any employé, or of any person or persons whomsoever, or any legal liability on the part of said House of Dolge, either in law or in equity. These transactions could not be upheld as a gift to the

employés. Merely giving credit upon their pass books for certain amounts did not constitute a valid gift. To sustain a gift of this character, there must have been on the part of Dolge an intent to give, and an actual payment and complete delivery of the money to or for the employés, wholly devesting Dolge of the control of it. At the time of the assignment, if a fund had been set apart, and the amounts entered in the pass books, so that the claimants could have drawn the sums placed to their credit, then the claims of the appellants might be upheld; but as there was no fund set apart, they can have no legal claim to any of the assets of the firm in the hands of the receiver. In McNevin v. Process Co., 32 App. Div. 610, 53 N. Y. Supp. 98, affirmed in the court of appeals, 167 N. Y. 530, 60 N. E. 1115, it was held that an employé could not demand payment of the sum credited on his account under a somewhat similar plan; that it was for the trustees to determine when payments would be made, and their decision was final. It was also held that the amount credited was an incomplete gift, which was unexecuted, and could not be enforced.

It is urged by the learned counsel for the appellants that the sums credited to the employés on the pass books were wages, but the facts do not sustain this contention. The preamble to the so-called "Laws" states that the object of the plan was to have the male employés receive a share of the net earnings of the business over and above their wages, and to secure a just distribution of such net earnings among its employés, and that it was entirely discretionary with the House of Dolge to decide how much of the net earnings of the business should be set aside for the distribution account. It will be seen from the substance and the language of the preamble that the scheme of crediting the employés on the pass books was entirely distinct from wages, which were paid weekly to the employés. The question here is whether these claims were entitled to a preference under the provisions of the statute. The statute under which the employés of the firm might claim preference is section 8, c. 415, Laws 1897, known as the "Labor Law," which reads as follows:

"Upon the appointment of a receiver of a partnership, or of a corporation organized under the laws of this state, and doing business therein, other than a moneyed corporation, the wages of the employés of such partnership or corporation shall be preferred to every other debt or claim."

This is purely a statutory preference, which neither Dolge nor the firm could enlarge by any agreement. Even if the agreement could be so construed that the employés contributed to the business the sums actually due them for wages, by so doing they would waive their statutory right to the preference. The amounts contributed would then lose their character as wages, and would become mere claims for money loaned. In Re Stryker, 158 N. Y. 528, 53 N. E. 525, 70 Am. St. Rep. 489, Judge O'Brien, in discussing the provisions of this statute, says:

"The most important word in the statute is the word 'wages.' It was wages that the legislature intended to prefer in the distribution of the assets of the insolvent corporation, not salaries, nor earnings, nor compensation."

He also says (page 529, 158 N. Y., page 526, 53 N. E., 70 Am. St. Rep. 489):

"In order to give the preference provided by the statute, the claim must be for wages in the ordinary sense of that term."

It is also urged by the appellants that the winding up of the business by the receiver and assignee is within the meaning of the words "winding up of the business," as used in section 6 of the insurance law and section 10 of the endowment law. Those provisions evidently referred to liquidation by Dolge or the firm in case they were solvent and were winding up the business, but even so it was entirely discretionary with them whether or not they should pay any of the claims. It follows, therefore, that the appellants and those having similar claims have no legal right to any of the copartnership funds that passed into the hands of the receiver.

The order appealed from should be affirmed, with $10 costs and disbursements to the respondent. All concur.