## DIMOCK v. CORWIN, Late Collector of Internal Revenue.
### No. L–6839.

District Court, E. D. New York.
April 14, 1937.

Hawkins, Delafield & Longfellow, of New York City (E. J. Dimock, C. O. Donahue, A. F. Strasburger, Jr., and J. D. Rawlings, all of New York City, of counsel), for plaintiff.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Clarence E. Dawson, Sp. Assts. to Atty. Gen., all of Washington, D. C., and John G. Dalton, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant.

BYERS, District Judge.

This is an action at law in which recovery is sought of certain alleged overpayments of Federal estate taxes in connection with the estate of Henry C. Folger, deceased.

The decedent died on June 11, 1930, a resident of this district and on June 10, 1931, his executrix filed a Federal estate tax return; these issues concern certain contested items, as to all of which the tax was paid under protest; recovery as to them is now sought.

There are no issues of fact, and the evidence is to be found in the pleadings and stipulations of facts, corporate records concerning the issuance of the stock hereinafter referred to, and sundry stock certificates.

The questions may be conveniently stated as follows:

I. Was the death benefit paid by the Standard Oil Company of New York to Mr. Folger's wife part of his estate and taxable as such?

The answer turns upon the construction applicable to a "Plan for Annuities and Insurance as amended, effective July 1, 1926," promulgated by the Standard Oil Company of New York, of which the decedent was an employee and officer for many years. It has to do with annuities payable to employees who become eligible for retirement or annuity upon reaching a certain age and after having rendered a stated term of service to the company.

Part Two, Section 2, deals with the amount of payments upon retirement and the method; it is not disputed that the decedent was in receipt of such an annuity following his retirement, which occurred on February 29, 1928, namely, the sum of $81,500.00 per year, payable in equal monthly installments. No question arises in reference to that aspect of the plan.

Issue is made, however, with reference to a death benefit treated in Part Three, the pertinent provisions of which are:

"Section 1. Eligibility.

"The beneficiaries of all employees of one year's continuous active service and the beneficiaries of all annuitants retiring on or after July 1, 1919, shall without contribution on their part be eligible to death benefits in accordance with and subject to the conditions and exceptions of the following plan:

(The maximum benefit was twelve months' full pay, which applied in this case.)

"Section 2, Subdivision B. Annuitants.

"The amount of death benefits payable under this section of the plan to the beneficiaries of annuitants retiring on or after July 1, 1919, subject to the conditions and exceptions hereinafter provided, shall be equal to 12 months' full pay at the rate which the annuitant was receiving at the time of his death."

"Section 3. Method of Payments.

"A. All employees and all annuitants retiring on or after July 1, 1919, shall immediately designate in writing the name of the beneficiary or beneficiaries to whom the death benefits are to be paid and file same with the Company. Any such employee or annuitant shall have the privilege of revoking such designation or changing it at discretion by filing such revocation or new designation with the Company. If the name of no beneficiary shall have been filed or, if filed, the death of such beneficiary precedes the death of such employee or annuitant, such death benefits shall lapse, it being the intention of this plan that no one, except such designated beneficiary or beneficiaries surviving such employee or annuitant, shall have any claim for or be entitled to such death benefits or any part thereof."

"Section 4. Deduction on Account of Liability under Compensation or Other Laws.

"Should this Company be liable to make payments to the estate or dependents of any deceased employee, or to any other person, under any State or Federal Compensation statute or other law making the Company liable because of the death of the employee, the amount which the Company is obligated to pay on account of said death will be deducted from the amount which would otherwise be payable to the beneficiaries hereunder, and in such case no payment will be

made under this plan until the extent of such liability is determined."

"Part Four: General Rules."

"Section 2. Other Provisions.

"The annuities and benefits herein provided for are voluntary grants by the Company and this plan shall not be construed as giving any employee the right to be retained in the service of the Company, or any right or claim to an annuity or death benefits to his beneficiaries after discharge from the service of the Company.

"The Company reserves the right at any time at its discretion to withdraw or modify this plan, either as to annuities or death benefits.

"Death benefits will be paid in accordance with the plan as it is in effect at the date of the death of the employee or annuitant.

"When once an annuity has accrued and been granted as a regular allowance, it will be continued for the life of the annuitant, subject, however, to the provisions of this plan as it is in effect at the time such annuity is granted."

The decedent had designated his wife, Emily C. J. Folger, as the beneficiary to whom should be paid the death benefit contemplated by the plan, and commencing August 1, 1930, she duly received in twelve equal monthly installments the total sum of $81,500.00 pursuant to said plan.

The value of the last-named sum at the time of the death of the decedent was $79,791.63, which the Commissioner of Internal Revenue included as part of the gross and net estates of the said decedent, and the legality of such inclusion now requires determination.

The applicable statute is the Revenue Act of 1926, Section 302, 44 Stat. 70 (26 U.S.C.A. § 411 (a) which reads:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(a) To the extent of the interest therein of the decedent at the time of his death."

It is argued for the defendant that "Mr. Folger's death was the generating source of an important benefit to his beneficiary and the value of that benefit at the date of his death should be included" as was done;

that "this statute fully contemplates the inclusion of a payment of this nature."

The precise property of the decedent is asserted to have been his right—which was exercised—"to designate the beneficiary of his death benefit."

It becomes necessary to inquire then as to the constituency of that privilege which pertained to the decedent, in order to ascertain whether it conformed to any recognized definition or understanding of what the law knows as property.

The inquiry is not illuminated by judicial construction of this statute, but under date of March 8, 1937, Vol. XVI, No. 10, of the Internal Revenue Bulletin contains an opinion of Chief Counsel for the Bureau of Internal Revenue which is flatly opposed to the defendant's contention. The cases of McNevin v. Solvay Process Co., 32 App.Div. 610, 53 N.Y.S. 98, Dolge v. Dolge, 70 App. Div. 517, 75 N.Y.S. 386, and Burgess v. First National Bank, 219 App.Div. 361, 220 N.Y.S. 134, are cited to vindicate the view that under a comparable state of facts " * * * it is clear that the decedent's interest in the death benefit prior to his death was nothing more than an expectancy, which is not a property right and, therefore, not includible in his gross estate under section 302 (a) as amended."

It was further the opinion that the death benefit did not constitute insurance under section 302 (g), 26 U.S.C.A. § 411 (g), i. e.:

"The liability of the M company for the payment of the death benefit to the beneficiary designated by the decedent did not arise until the death of the decedent. Consequently, the decedent had no contractual or vested right in the death benefit during his lifetime."

The foregoing views have been formulated with care, and require consideration on this branch of the case.

The defendant's argument is that, when the decedent designated his wife to receive the benefit, "he transferred to her his beneficial interest in the plan which was intended to take effect in enjoyment at his death."

The foregoing betrays a complete misunderstanding of the difference between the annuity payable to Mr. Folger, and the death benefit payable to his wife. As to the latter, he was possessed of nothing during his life, save the capacity to nominate a

person to whom, upon his death, the company could grant a sum called a death benefit. Any nomination which he might make was revocable by him; which means that he could substitute any number of persons in turn, depending upon his own notions. What he could not control, however, was the capacity of a nominee to qualify as a recipient, by surviving him. Thus it would have been possible for Mrs. Folger's death to occur prior to his, but under circumstances not affording him an opportunity to nominate some one in her place. If that had happened, exercise of the privilege to nominate would have failed to bring about the payment of a death benefit to any person at all.

It is no answer to say that, because these things did not occur, resort may not be had to the reflection that they were possible, because the nature of the capacity which pertained to the decedent must be so understood, in the process of determining whether it is fairly to be classified as property and taxable as such.

The distinction between a power of appointment, or the power to change a beneficiary named in a life insurance policy, and such a privilege as was accorded to this decedent under the terms of the plan, stands clearly revealed in the light of what has been written. Under either of the former, a fund or estate passes to some one in possession, as the result of the exercise of the power.

Here nothing may be payable, if the named beneficiary predeceases the annuitant, but since a payment did accrue, because the annuitant named a surviving beneficiary, that result is to be traced not to a transfer of anything from Mr. Folger to his wife, but to the circumstance that the annuity which he had enjoyed became extinct through his death, and a new relation came into existence between the company and Mrs. Folger.

The right to nominate or designate the person to receive the death benefit could not have been levied upon to satisfy a judgment against the decedent during his lifetime; had he become bankrupt, his trustee could not have realized anything thereon for creditors, nor could it have been sold or assigned by the decedent because it was merely a privilege extended to him by his employer, which was subject to withdrawal or modification at any time, under the quoted terms of the plan.

The cases cited by defendant are: Klein v. U. S., 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996; Chase National Bank v. U. S., 278 U. S. 327, 49 S.Ct. 126, 128, 73 L.Ed. 405, 63 A.L.R. 388, and Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565. The first determines that the grantor of certain real estate created a life estate for his wife, and by the same instrument, a contingent remainder in fee. Since the event upon which the latter would have become vested did not occur, an estate tax under an earlier statute, upon the value of the property, less the value of the life estate, was sustained. This case presents issues entirely alien to those under examination.

The second case has to do with section 402 (f) of the Act of 1921 (42 Stat. 278) which affected life insurance policies in excess of $40,000.00 upon the life of the decedent. That section, or its successor under the 1926 Act, is not presently involved.

The opinion is most instructive in pointing out the process leading to the conclusion that a transfer tax, as distinguished from a succession tax, applied to the power which that decedent possessed to change beneficiaries: "Such an outstanding power residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers."

Touching the argument that the proceeds of the policies were payable by the insurer, and not the decedent, thus excluding a *transfer,* the court says: "Obviously, the word 'transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another."

These quotations are permissible to expose the precise inapplicability of the reasoning touching the taxable susceptibility of insurance policies, to the death benefit under the plan here presented.

There was no gift which Mr. Folger could either make or recall; he made no expenditure with the purpose, effected at

his death, of having property pass to another.

The third case involved a succession tax under Massachusetts law which was held to have been properly assessed. It has no bearing upon this controversy.

It is concluded as to the first question, that there pertained to Mr. Folger, during his life, only the right to render it possible for Mrs. Folger to receive a grant from the Standard Oil Company, and that this did not constitute property of his under section 302 of the law, or subdivision (a), and that the act of naming her as the recipient of the death benefit was not a transfer of property by him to her, so as to fall within subdivisions (c) or (d), 44 Stat. 70, 71, see 26 U.S.C.A. 411 (c, d).

■ II. Was the property of Mrs. Folger in stocks jointly owned by her and her husband, properly included in the computation of the estate tax payable upon his estate?

The facts concerning this branch of the case are:

The decedent and his wife were joint tenants of very considerable holdings of various Standard Oil stocks, the details concerning which have been stipulated according to Exhibit C. annexed to the complaint.

The joint estate was constituted on or about May 1, 1916, which was prior, by over four months, to the enactment of the first Federal Estate Tax Law, 39 Stat. 777, § 200 et seq. Thereafter there were substantial accretions to this joint estate, as the result of stock dividends, split-ups, and the exercise of rights to subscribe. As to the latter, it is the value of the rights only which is asserted to have been improperly assessed.

The valuation of the joint estate as at the decedent's death is not in issue, but the contention is that but one-half thereof should have been included in fixing the amount payable for the purposes of the estate tax.

The applicable paragraphs of Section 302 of the law follow:

"(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and

never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth; Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants; * * *" (26 U.S.C.A. § 411 (e).

"(h) Except as otherwise specifically provided therein, subsections (b), (c), (d), (e), (f), and (g) [of this section] shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act [February 26, 1926]." (26 U.S.C.A. § 411 (h).

If the assessment had been made with reference to real estate held by Mr. and Mrs. Folger, as tenants by the entirety, its validity would not be open to question, Third National Bank & Trust Co. v. White, 287 U.S. 577, 53 S.Ct. 290, 77 L.Ed. 505, even though the creation of the estate preceded the passage of the Federal Estate Tax statute.

Knox v. McElligott, 258 U.S. 546, 42 S. Ct. 396, 66 L.Ed. 760, does not avail the plaintiff here, even though a joint estate was involved in that case which had been created in 1912. The assessment there reviewed and set aside was upon the whole joint estate and was based upon the Act of September 8, 1916 (39 Stat. 756) which did not contain such a provision as subdivision (h) of section 302 of the 1926 Act here presented. That decision is still the law. Cahn v. U. S., 297 U.S. 691, 56 S.Ct. 384, 80 L.Ed. 985.

The validity of a tax upon the entire value of property held in entirety, upon the

death of one of the tenants, was sustained in Tyler v. U. S., 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758, where the estates had been created subsequent to the effective date of the 1916 Act.

The plaintiff rests his contentions upon the assertion that there is such a difference, in the legal sense, between a joint estate and an estate by the entirety, that decisions affecting the latter should not be deemed to control in the case of a joint tenancy.

Such interests were present in the two following cases:

Gwinn v. Commissioner, 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270—One-half of a joint estate in land, created in 1916, was held to have been properly included in an assessment laid under the 1924 law (43 Stat. 253).

There had been no assessment upon the entire joint estate which was later reduced to one-half, as in Griswold v. Helvering, 290 U.S. 56, 54 S.Ct. 5, 78 L.Ed. 166, which involved a joint estate in land, created in 1909.

The court considered an objection based upon the alleged retroactive effect which was given to the law, and disposed of it tersely upon the ground that cessation of the interest of the deceased joint tenant "presented the proper occasion for the imposition of a tax. See Gwinn v. Commissioner, 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270 and cases cited."

The statute involved was section 402 of the 1921 law, subdivision (d), 42 Stat. 278, reading: "(d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person."

Apparently the plaintiff's argument is that, because the inclusion of the moiety pertaining to the deceased joint tenant, in fixing the taxable value of his estate for the purpose of the estate tax, has been found proper, that course should have been followed in this case; which means that the inclusion of his interest in the whole estate, i. e., what he held "per tout," has not been sanctioned, and should now be disapproved.

That there is a difference in the legal aspect of the two estates has been recognized, since during the joint lives there may be a severance in the case of a joint tenancy, but not in an estate by the entirety, according to the decisions of the New York courts which are controlling. Matter of Suter's Estate, 258 N.Y. 104, 179 N.E. 310; Matter of Klatzl's Estate, 216 N.Y. 83, 110 N.E. 181.

Had there been a severance in this case, it may be assumed that a tenancy in common would have been brought about, and the present issue would not have arisen.

So much of the argument as is based upon the objection to retroactive taxation, and the cases of Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76, and White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, seems not to apply for the reason that the death of one joint tenant is the means whereby the consummation of the other's indefeasible title is accomplished, and it is that process which is taxable, without regard to the fact that its potential operation was a vital thing resting upon a legal foundation laid prior to the first taxing statute.

If such is the teaching of the Tyler Case, supra, it is not perceived how there is any difference in principle between a joint estate, and an estate by the entirety, for present purposes.

The cessation of the seizure "per tout" on the part of Mr. Folger removed that element in Mrs. Folger's tenancy which was present so long as he lived, and did not differ in texture but in area from his seizure "per my," and the reasoning which validated the assessment of the latter would be equally persuasive when applied to the former.

The assessment therefore must be upheld, subject to examination of the next contention.

III. The next question concerns so much of the joint estate as was the sole property of Mrs. Folger at the time of the creation of the joint estate, and constituted her contribution thereto.

She had received these shares in two corporations in 1913 and 1914 as gifts from her husband, and the query is as to the propriety of their inclusion in this assessment.

Subdivision (e) of section 302 already quoted, as to the following, is thus brought into question:

"(e) * * *, except such part thereof as may be shown to have originally belonged to such other person [Mrs. Folger] and never to have been received or acquired by the latter from the decedent [her

husband] for less than an adequate and full consideration in money or money's worth."

It is clear that, if Mrs. Folger had owned the shares by virtue of a gift of them from her father for instance, they would have been excluded from the assessment. But the fact is that the gift was from her husband.

The joint estate was created in 1916 as has been said, a few months prior to the adoption of the estate tax. The chances are that the purpose of Mr. and Mrs. Folger was not entirely unrelated to the possible enactment of such legislation.

It is said in Phillips v. Dime Trust & S. D. Co., 284 U.S. 160, 52 S.Ct. 46, 76 L. Ed. 220, a case under the 1924 statute (26 U.S.C.A. § 411 note) that language such as is above quoted had been present in the successive revenue acts, beginning with the 1916 law.

This means that the purpose of Congress to impose such a tax, under the circumstances stated in the statute, has been clearly revealed for over ten years, without having resulted in any construction which would limit its application, where one joint tenant contributes to the joint estate what has been received as a gift from the other, to cases in which the joint estate was created after the enactment of the law.

■ When it is considered that the entire joint estate of the decedent is taxable, the possible exemption of a designated element is a voluntary relinquishment by the government of such part of the tax as to it seems fair, and any construction of the exemption must be strict as against the taxpayer.

In other words, the absence of any expression to qualify the provision that such exemption attaches only to that which is shown "never to have been received," etc., excludes any latitude of construction. There is no ambiguity about the word "never."

The plaintiff relies on Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772, and Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934, but the points at issue in those cases are not here presented. In the first, the two-year period for presuming gifts inter vivos to have been made in contemplation of death, was ruled to be unconstitutional; and in the second, life insurance policies written many years prior to the 1916 law were held not to have been within the reach of the 1919 provisions of the law touching insurance in excess of $40,000.00.

The retroactive argument has been considered and found to be unavailing in the light of authoritative decisions, and that is conclusive upon the whole as well as on each part of the joint estate.

The third question is resolved in favor of the defendant.

■ The final issue has to do with the affirmative defense, that because the decedent's estate has received the benefit of a deduction for charitable bequests in excess of one-half of the entire estate, notwithstanding section 17 of the Decedent's Estate Law of New York (as amended by Laws 1927, c. 502), there can be no recovery of any part of the taxes paid.

The argument is that, despite the waiver by Mrs. Folger and the decedent's next of kin of any interest which by virtue of that law any of said persons might otherwise have had in any of the decedent's property, and the respective acceptances as the sole interest in his property of the disposition made in Mr. Folger's will, on the part of each of said persons, the proportion of the estate covered by charitable bequests was uncertain, contingent and not determined when the assessment was made. These waivers were executed on June 21, 1930, and were embodied in waivers of the issue and service of citations upon the probate of the will.

The assessment in question was made not less than one year thereafter.

The probate of the will under the circumstances related, coupled with the waivers with respect to the rights under section 17 of the Decedent's Estate Law, established once and for all the proportion of the estate going to charity [See Humphrey v. Millard (C.C.A.) 79 F.(2d) 107] and the exemption from Federal estate tax as to such portion of the estate, allowed by the Commissioner, was informed, deliberate and final.

The case cited is even stronger than this on the facts, because there the widow possessed the testamentary right to invade principal.

The affirmative defense is without legal basis to sustain it.

Judgment is ordered for plaintiff as to so much of the tax as represents the assessment made in connection with the death benefit only, to be settled on notice.