**Katherine H. MOLTER, Executrix under the Last Will and Testament of George F. Molter, deceased, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 16432.**

United States District Court
E. D. New York.

Dec. 10, 1956.

Lord, Day & Lord, New York City, by R. Palmer Baker, Jr., New York City, of counsel, for plaintiff.

Leonard P. Moore, U. S. Atty. for the Eastern Dist. of New York, Brooklyn, N. Y., by Myron Friedman, Asst. U. S. Atty., Long Beach, N. Y., for defendant.

BYERS, District Judge.

These are cross-motions for summary judgment under Rule 56, Fed.Rules Civ. Proc. 28 U.S.C.A. in a controversy which involves only a question of the taxability, for the purposes of the federal estate tax, of the sum of $62,400 assessed by the Collector of Internal Revenue for the First District of New York in connection with the death of George F. Molter on April 17, 1954.

The decedent was an employee in an executive capacity of the Socony Vacuum Oil Company (now known as Socony Mobil Oil Company, Inc.). There was credited to his widow as beneficiary designated by him the said sum which represented his salary for two years, as the result of his death after twenty years of active service but before retirement.

The question for decision is whether that sum was subject to an estate tax under Section 811 of the Internal Revenue Act of 1939 as amended in 1953, 26 U.S.C.A. § 811, which was in effect at the time of death. For ready reference the applicable portions of the statute follow:

"§ 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death;

\* \* \*

\* \* \* \* \* \*

"(c) Transfers in contemplation of, or taking effect at, death.—

"(1) General rule.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death.

\* \* \* \* \* \*

"(3) Transfers taking effect at death—transfers after October 7, 1949. An interest in property transferred by the decedent after October 7, 1949, shall be included in his gross estate under paragraph (1) (C) of this subsection (whether or not the decedent retained any right or interest in the property transferred) if and only if—

"(A) possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the decedent; or

"(B) under alternative contingencies provided by the terms of the transfer, possession or enjoyment of the property can, through ownership of such interest, be obtained only by surviving the earlier to occur of (i) the decedent's death or (ii) some other event; and such other event did not in fact occur during the decedant's life.

\* \* \* \* \* \*

"(d) Revocable transfers.

"(1) Transfers after June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale

for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death; * * *."

Since the inquiry is whether the sum in question can be deemed to have been the property of the decedent transferred by him, it is necessary to seek to ascertain whether the decedent was possessed of any property in the said sum, by virtue of the terms and provisions of the Plan pursuant to which the said payment was made; and if so, whether he transferred that property, within the contemplation of the statute.

The Plan is set forth in Exhibit A attached to the complaint; it is entitled "Survivorship Benefit Plan for 20-year Employees." Section 1 defines eligibility: "In order to be eligible for the benefit of this Plan an employee (a) Shall be a contributor under Company's Revised Plan."

The foregoing refers to a different subject-matter, concerning which no question arises in this controversy.

Eligibility further requires 20 years service, the designation of a beneficiary "in accordance with this Plan," continuous eligibility, death in the active service of the company prior to normal retirement date, and other matters not presently material.

The benefit is thus stated:

"Upon the death of an eligible employee in the active service of the Company, the Company shall provide a survivorship benefit in an amount equal to twice the annual rate of pay of the deceased employee * * *."

Under the title "Beneficiaries", those who answer that description are specified. The remaining provisions have to do with interpretation of the meaning and application of the Plan, which are confided exclusively to the Company's board.

The Company reserves the right at any time "to terminate, withdraw or modify this Plan in whole or in part at the discretion of the Board," and such termination shall have application "to existing employees * * * but a benefit which has once accrued in consequence of the death of an employee while this Plan is in effect will be paid in accordance with the Plan as it is at the time of death. If said Revised Plan or the provisions for annuities thereunder shall be discontinued, then this Plan shall automatically be revoked and of no further effect except in respect of benefits which shall have accrued by reason of death prior to such discontinuance. Any termination, modification or revocation shall be binding upon all parties affected without regard to any notice thereof."

The Plan is stated to be non-contractual and as to that, the language is: "* * * the Plan shall not be construed as creating any binding obligation on the Company to give or as giving anyone any enforceable right to a benefit except as provided * * * in the case where a benefit shall have accrued by death while the Plan is in effect."

A further provision concerning the non-assignable nature of the benefits reads:

"The benefits hereunder shall not be assignable or transferable by any employee or beneficiary directly or by operation of law or otherwise. The word 'otherwise' shall include without limitation any execution, levy, garnishment, attachment, seizure by other legal process, receivership, devolution by

death or in any other manner. The foregoing provision is a condition of the accrual of a benefit and of the several payments thereof, and in the event of any violation or non-compliance, no payment after such violation or non-compliance shall be made by the Company * * *."

A provision for deductions is also made in the event of payments otherwise necessarily made by reason of the death of any person, or of Workmen's Compensation benefit.

The foregoing Plan is not distinguishable in principle from that which was before this court in the case of Dimock v. Corwin, D.C., 19 F.Supp. 56, which was not appealed in respect of that branch of the case. That decision has not been adversely criticised in later cases.

The Government in opposition to the plaintiff's motion, argues:

(a) That this Plan differs from the one examined in the Dimock case in the following respects:

(1) Mr. Molter was required to be a contributor to an entirely different Plan in order to be eligible under this one.

The Company had the right to establish rules of eligibility which might have been either the one stated, or for instance, that a given employee should not weigh more than a given number of pounds for a given height, or that he should undergo periodical medical examination; or it might have otherwise specified qualifications of a personal nature which it deemed to be appropriate as a pre-requisite for making the payments which the Plan contemplated. Since the contribution referred to was not made to this Plan, it is clear that such contribution purchased nothing under it.

(2) That Mr. Molter had to designate a beneficiary acceptable to the Company.

This is a subject which was closely examined in the Dimock case and no reason is seen for repeating what was therein written.

This right to designate a beneficiary is more circumscribed than the one presented in the cited case, which means that this incident of the employer and employee relationship was less limited in Dimock, but no change of essential nature was thereby created. Since the employer could establish its own standards of eligibility, the requirement for the designation of a beneficiary was a matter lying entirely within its discretion; the creation of a contractual relationship between employer and employee in this connection was in terms excluded as has been seen from the provisions above quoted from Exhibit A of the complaint; thus there was no property possessed by Mr. Molter by virtue of the corporate purpose of his employer to pay two years' salary upon the happening of certain events, and hence there was nothing for him to transfer to his beneficiary.

(b) The Government's brief at page 10 contains the following:

"The Court in the Dimock case relied on the opinion of the Chief Counsel for the Bureau of Internal Revenue, General Counsel Memorandum 17817 (March 8, 1937, Vol. XVI, No. 10)."

The foregoing misconceives the language of the opinion in the case; this court did not rely upon the Counsel's opinion; it merely made reference to it as expressing a view in harmony with that of the court. Had the Chief Counsel written no memorandum, or published one in opposition to the views of this court, the decision in the Dimock case would have been the same as it was.

Reference to the revised view of the Bureau contained in GCM 27242 is not helpful in the decision of this case.

It is argued for the Government that this case must be distinguished from Dimock "on the ground that consideration passed from the decedent to Socony-Vacuum Oil Company by reason of his contribution to the Company's Revised Plan as required by the Survivorship Benefit Plan." The Government's brief cites the case of Sutro v. U. S., 32201–L, Northern District of California, Southern Division, June 16, 1942. In that opinion the Dimock case is discussed, with this comment:

"It is difficult to see how money payable only in the event of death could be part of a man's estate unless specifically made payable to him. The case does not seem to be in point."

With the foregoing this court is in agreement, which means that the Sutro case is not in point in this controversy.

As has been stated above, this contention adds nothing to the Government's position, since the contribution that Mr. Molter made to the Company's Revised Plan had no effect upon his status under the Survivorship Benefit Plan; it merely established a test of his eligibility to participate therein.

Page 3 of the plaintiff's brief contains the following statement:

"In I. T. 3840, Cumulative Bulletin 1947–1, p. 7, the Internal Revenue Service ruled that benefits paid under this Plan are taxable income to the beneficiary."

The foregoing is in connection with the statement in paragraph Sixth of the complaint that,

"In the present case the Board chose to make the payments to the plaintiff in the amount of $185.95 per month for the remainder of her life. If she should die before receiving the full $62,400, the balance will be paid to her children, if they survive."

The statement in the brief can scarcely be regarded as before the court in the consideration of this motion, but if it is accurate, it must be obvious—in an aside—that the tax gatherer cannot have it both ways, first, as an estate tax on the theory that it was property of the decedent, and secondly, as an income tax payable by the decedent's widow.

As has been said, Mr. Molter possessed no property in the Survivorship Benefit Plan and there was therefore nothing for him to transfer to this plaintiff, and his two years' salary amounting to $62,400 did not become a part of his estate and it was not subject to the federal estate tax.

Therefore the plaintiff's motion for summary judgment is granted, and the defendant's is denied.

Settle order.