ESTATE OF EMIL A. STAKE, DECEASED, THE FIRST NATIONAL BANK OF CHICAGO, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15191.   Promulgated November 8, 1948.

*Harry B. Sutter, Esq.*, and *Harry D. Orr, Jr., Esq.*, for the petitioner.
*A. H. Moorman, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The parties specifically agree that our question is as follows: Is the commuted value of annual payments to decedent's widow from a pension fund established by decedent's employer, the First National Bank of Chicago, to which fund the decedent and his employer made annual contributions during the 40-year period of decedent's employment, includible in decedent's gross estate under section 811 (c) of the Internal Revenue Code?

The respondent states his position to be that, by virtue of a contract between the decedent and his employer, his widow at his death, through her survivorship, became entitled to receive a pension for lifetime or until remarriage, and that the value of such right at the date of decedent's death is includible in his estate under section 811 (c) of the Internal Revenue Code. The respondent has determined such value to be $68,931.63 and the petitioner does not disagree with that value.

The respondent argues that here the pension plan, embodied in published rules and holding out an inducement for continued employment, constituted an agreement; that, though language appears in the plan to the effect that employees had no vested rights in the fund, they in fact, as shown by other language in the plan, possessed vested rights; that the bank had no reversionary interest in the fund; and that it was payable under various circumstances to the employees or beneficiaries. In maintaining that the valuation of the benefits payable to the decedent's widow is includible in his gross estate, the Commissioner relies primarily upon *Commissioner* v. *Wilder's Estate*, 118 Fed. (2d) 281; *Commissioner* v. *Clise*, 122 Fed. (2d) 998; and *Mearkle* v. *Commissioner*, 129 Fed. (2d) 386. These cases, in general, involve joint and survivorship annuities purchased by the decedent.

The petitioner states that it is not contended that the bank in its discretion could arbitrarily refuse to grant a pension to an employee qualified for one, or arbitrarily discontinue or alter a pension once granted. The petitioner, moreover, concurs in the respondent's general conclusion that the pension plan created an enforceable contract and that to the extent that it created rights in third party beneficiaries it is enforceable by them, but says that the nature of such rights must be examined. It is, therefore, argued that Emil A. Stake had during life a vested interest only in the return of his contributions, $14,893.20, if his services were terminated voluntarily or involuntarily, and the right to a distribution of the fund in the event of termination of the

plan in accordance with the rules then in existence. Petitioner argues that Emil A. Stake never had a property interest in the pension fund and that he did not make a transfer of property and retain enjoyment thereof during his life, within the ambit of section 811 (c) of the Internal Revenue Code. Reliance is placed largely upon *Estate of Edmund D. Hulbert*, 12 B. T. A. 818; G. C. M. 17817, XVI–1 C. B. 281; and *Dimock* v. *Corwin*, 19 Fed. Supp. 56, and petitioner argues that in the *Hulbert* case, involving compulsory contributions to a pension fund similar to that here involved, we held that nothing could be included in Hulbert's estate because of the pension; that the Commissioner acquiesced therein; that in G. C. M. 17817 the Bureau of Internal Revenue considered a pension plan under which a decedent designated a beneficiary who received the death benefit, but where a company reserved the right to withdraw or modify the plan through guaranteeing that death benefits would be paid in accordance with the plan in effect at the date of employee's death, the decision of the company to be conclusive in the interpretation or administration of the plan; and that the conclusion of the Bureau of Internal Revenue was that the decedent's interest in the death benefit prior to his death was nothing more than an expectancy, not a property right, and, therefore, was not includible in his gross estate. In *Dimock* v. *Corwin*, *supra*, the petitioner urges, the pension plan was more favorable to respondent's position than that here involved, the employee having a right to designate and change the beneficiary, yet nothing was included by the court in the decedent's gross income on account of the widow's expectation of receiving a pension, the court concluding that the right to designate a beneficiary did not constitute property and stating as to the death benefit that the decedent was possessed of nothing during his life save the capacity to nominate (with power of revocation) a person to whom, upon his death, the company could grant a death benefit, but that he could not control the capacity of a nominee to qualify as a recipient by surviving him. Petitioner points out that the Commissioner did not appeal on this point in the *Dimock* case from a holding that the death benefit was not includible in employee's gross estate.

Did the decedent possess vested rights or a mere expectancy? Examination of the provisions of the pension plan reveals that the decedent, as an employee, was required to contribute to it, that the bank should decide when the employee might receive an annuity or pension, but that, as a general rule, no pension should be granted unless the employee had completed 15 years service and attained the age of 60 years. Petitioner, at his death, had not attained such age, but had served more than 15 years. His widow, under paragraph 13 of the pension plan, was entitled to receive one-half the pension which her husband was receiving as a pensioner or which her husband, if not on pension, would have been entitled to receive if retired on pension

as of the date of his death, such pension to cease on her remarriage. Under paragraph 22, if the pension fund should be discontinued, it would be distributed, and an employee "not in receipt of a pension or entitled to receive a pension by reason of both age and length of service * * * shall be repaid the amounts paid * * *" by him, without interest; provision, by annuity or otherwise, should be made "for the payment of pensions granted and effective or to which any officer or employee by reason of both age and length of service would be entitled to receive * * *"; and, lastly, any balance should be distributed to officers and employees "not in receipt of a pension or entitled to receive a pension by reason of both age and length of service," in general, in the proportion of the contributions of each employee so classified to the contributions of all in such class.

Reviewing the above provisions, and aside from discretion in the bank elsewhere appearing in the plan, we find that the decedent, having died before the age of 60, was not entitled to a pension under any provision of the plan, and, so far as the record shows, was not receiving a pension at the time of his death, and, therefore, his widow was entitled to none, though in fact she later received a pension. In short, though the plan reveals provisions for widows' pensions, none appear under the facts here shown, and the payment to decedent's widow was not by virtue of any right thereto, either in her, or in him at the time of his death, under the facts and the provisions of the plan. So far as we can see in the provisions of the plan, the decedent, not having already received a pension, had to live until 60 years of age before he could be assured that his widow would receive one. We can discover no right in him prior to death that his wife should receive the pension she was later actually paid. It appears to have been granted within the discretion lodged in the bank under the plan. In this we find not more than an expectancy on his part. His right, prior to age 60 but after 15 years service, even to the return of contributions made by him, does not clearly appear in the plan, but since paragraph 7 provided, in the case of an employee who had *not* completed 15 years service but died leaving a widow, that if he had not been granted a pension his contributions, with 4 per cent interest computed half-yearly, might be returned to his legal representatives, it appears that the decedent, having completed 15 years service, should be regarded in an equally advantageous position; and since, as above seen, the petitioner does not contend that the bank could arbitrarily refuse a pension to a qualified employee, we think that a fair interpretation of the plan indicates that the decedent had a right to the return of his contributions to his legal representatives, and 4 per cent interest, computed half-yearly. Beyond this the plan does not go, and we discern therein nothing unreasonable in the fact of contributions by the employee without positive assurance of a pension before age 60,

or affirmative right that his widow, under such circumstances, receive a pension, but only an expectancy thereof, and, we may here assume, a right to such pension if he survive to 60 years; also a right to repayment of contributions under certain circumstances. The contributions were undoubtedly consideration, but not necessarily consideration for the rights asserted by the respondent. In our view, they were consideration for the limited rights to repayment and some expectancy, both of a pension before 60 years and a pension to the widow.

In addition to the conclusions above expressed, in our view, the authorities above named as relied upon by the petitioner compel the holding that the decedent had at most an expectancy of a pension to his widow. The facts in *Dimock* v. *Corwin, supra,* and G. C. M. 17817 were not so strong in support of petitioner's view as those here involved, for in each of those instances the employee had the right to designate the beneficiary, whereas the decedent here had no such right. The plan itself designated the beneficiaries as widow and/or children. Nevertheless, both the court in *Dimock* v. *Corwin* and the Bureau in the above G. C. M. took the view that the decedent's interest was nothing more than expectancy, not a property and not includible in his gross estate. We think that conclusion sound. The opinion in the *Hulbert* case does not indicate whether the decedent could designate the beneficiary.

The cases primarily relied on by the respondent are not helpful here, for they involved joint and survivorship annuities, purchased by the decedent. The holding in those cases, in effect, that the decedent had a property interest and that he conveyed it is soundly based in the fact of purchase of the annuities by him. Here the decedent made only a limited contribution, under a plan limiting his rights as above set forth, resulting, in our view, in no property rights and no transfer. The respondent distinguishes the *Hulbert* case on the ground that it involved a contention that there was insurance, which the opinion did not adopt. This fact, on the face of that opinion, makes the case of limited application here. Nevertheless, the opinion does say that the contributions which Hulbert was compelled to make to the fund created no vested right in him or his beneficiaries to receive a pension, nor did it impose any contractual obligation upon the trustees to pay a pension, but that it was entirely a matter of choice by the trustees. It was held, however, that there was obligation arising from decedent's contributions to return the contributions with compound interest if a pension should not be paid, and such amount was found includible in decedent's gross estate. Obviously, such conclusion, after the denial that there was insurance, was based upon a property right in decedent and transfer thereof, under section 402 (c) of the Revenue Act of 1941, predecessor of section 811 (c). The petitioner here cites the *Hulbert* case as "four square on the facts in the instant case" and

urges that the provisions of the plan there involved, and here at hand, are on all fours, and only queries as to the applicability, at this time, of the *Hulbert* case so far as it includes in gross estate the amount of decedent's contributions, and interest thereon, since the ruling in E. T. 18, 1940–2 C. B. 285. Therein it is stated that amounts payable under the Social Security Act to the widow, children, or parents of a "fully insured" or "currently insured" decedent who died after January 1, 1940, are not includible in gross estate under section 811, examination of that act showing that the decedent had no control over the designation of the beneficiaries or the amounts payable directly to them, and the decedent having, it is held, no property interest in the Old Age & Survivors Insurance Trust Fund. E. T. 18 specifically states that it does not affect E. T. 10, C. B. 1937–2, 469, relating to payments under section 203 of the Social Security Act to the estate of a decedent dying prior to January 1, 1940. E. T. 10 holds that such payments to the estate were includible at that time in gross estate. Paragraph 7 of the pension plan, as above seen, provides for payments to the decedent's legal representatives of his contributions, plus interest, in case of the decease of an employee without completion of 15 years service; and we have above applied the same rule in the case of the decedent who had completed such 15 years service. Neither the petitioner nor the respondent argues that the Social Security Act and its provisions are applicable here, and nothing indicates to us that the statutes are such as to cause application under the circumstances here involved. The pension plan provides specifically that upon voluntary resignation the employee shall be returned his contributions, without interest. To that extent he had dominion and control over such contributions, a property interest. Under the *Hulbert* case and the general considerations above examined, we conclude, as was in that case found, and we hold that there is includible in decedent's gross estate only the amount of contributions made by him, with 4 per cent interest, computed half-yearly until the date of his death.

*Decision will be entered under Rule 50.*