Estate of William S. Miller, Deceased, the Northern Trust Company, Former Executor, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 19505. Promulgated April 21, 1950.

*Leland K. Neeves, Esq.*, for the petitioner.
*A. H. Moorman, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: Petitioner here challenges the respondent's determination that the commuted value of the annual pension payable to the decedent's widow is includible in the decedent's gross estate under section 811 (c) of the Internal Revenue Code. Specifically, the question is whether or not the pension payable to decedent's wife under the pension trust constitutes an interest in property of which the decedent had by trust or otherwise made a transfer "intended to take effect in possession or enjoyment at or after his death."

The word "Transfer" as used in the statute includes the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. *Chase National Bank* v. *United States*, 278 U. S. 327. The statute deals with property not technically passing at death but with interests theretofore created, and subjects to tax "inter vivos transfers that are too much akin to testamentary dispositions not to be subjected to the same excise." The measure of the tax is the value of the property at the time when death brings it into enjoyment. *Helvering* v. *Hallock*, 309 U. S. 106.

Respondent rests his determination on the principle established in *Commissioner* v. *Wilder's Estate*, 118 Fed. (2d) 281; certiorari denied, 314 U. S. 634; *Commissioner* v. *Clise*, 122 Fed. (2d) 998;

certiorari denied, 315 U. S. 821; and *Mearkle's Estate* v. *Commissioner*, 129 Fed. (2d) 386. In each of those cases, the decedent purchased, for a lump sum, joint and survivor annuity contracts and at the time of purchase irrevocably designated the surviving annuitants. In all three cases the courts held that the commuted value of the survivor's annuity was includible in the decedent's estate under section 811 (c). The doctrine of those cases was best expressed in the opinion of the Circuit Court of Appeals for the Ninth Circuit in *Clise* v. *Commissioner*, *supra*, which stated that:

* * * The practical effect of the annuity contracts was to reserve to Mrs. Clise the enjoyment of the property transferred and to postpone the fruition of the economic benefits thereof to the second annuitants until her death. In the light of the *Hallock* case the transfers were "too much akin to testamentary dispositions not to be subjected to the same excise."

The principle announced in those cases has been extended by us to cases where the survivorship rights were not acquired by the decedent through a cash purchase, but incident to an employment contract. In *Estate of William L. Nevin*, 11 T. C. 59, we held that the value of the decedent's gross estate should properly include the commuted value of payments which were payable to the decedent's widow under a contract whereby decedent agreed to resign as the managing trustee of certain trusts in return for certain fixed payments payable to him over a 10-year period, with the proviso that if he died during such period the payments were to be continued to his widow. The transaction whereby decedent's wife received certain sums of money following his death was held to constitute a transfer intended to take effect in possession or enjoyment at or after his death and to bring the case within section 811 (c). In *Estate of William J. Higgs*, 12 T. C. 280, the decedent was employed by an oil company which purchased an annuity contract for him upon retirement, under which decedent had the election to accept a smaller annuity for himself and thereby obtain a survivorship annuity for his wife. We held that the decedent's exercise of this election effected a transfer to his wife of an annuity, the value of which was includible in his gross estate under section 811 (c).

While it is true that the instant case presents points of similarity to the cited cases, there are a number of material distinctions herein which in our opinion call for a different conclusion.

At the outset, it should be borne in mind that the annuity contracts purchased by or for the benefit of each of the decedents in the cases cited above vested in both the decedent and the "second annuitants" fixed and enforceable property rights which were thereafter subject neither to revocation nor modification by either of the principal parties to the contracts. Such was clearly not the case in respect to the pension

rights acquired by either the decedent or his wife under the pension trust of the Northern Trust Co. here involved.

Although decedent's participation in the pension trust was compulsory under rule 8 of its rules and regulations, it is clear that he possessed no property rights under the pension trust prior to reaching the age of 65 other than the right to have his contributions, plus interest, refunded to him upon his resignation or dismissal from his position with the bank. Nor were his pension rights enhanced to any great extent by his actual retirement. Under rule 25, his acceptance of a position with another banking institution after retirement without the permission of the Northern Trust Co. would have resulted in the forfeiture of his pension. By rule 26 it was further provided that his pension would cease upon bankruptcy, voluntary assignment, conviction of a felony, or upon any judgment or decree for the payment of money being made against him. The trustees were empowered at any time to change the rules and regulations or to substitute entirely new rules; to increase or reduce the rates of contributions by the bank or the officers and employees; and to reduce or increase the pension allowances, provided only that no such change would be made which would deprive any contributor of the right to have his contributions returned to him. The pension trust could be terminated at any time by the bank and, although rule 29 provided that upon termination provision should be made for the continuance of all pensions then being paid to pensioners, there was no assurance that decedent's pension rights could have been enforced to their fullest extent against the pension trust unless there existed sufficient funds in the trust upon its cessation to discharge all of its obligations.

Nor did the pension rights granted the wife by virtue of rule 17 stand in any stronger position than those of her husband, for it is clear that whatever rights she possessed were subject to the same contingencies as those of the decedent, and the rules and regulations were equally applicable to employees and their wives. Any pension granted to the wife would cease upon remarriage. In our judgment, the pension rights acquired by decedent and his widow under the pension trust were in no material respect comparable to those acquired by the beneficiaries under the annuity contracts involved in the cases cited above and relied upon by respondent. On the contrary, it is our considered opinion that decedent's pension rights and those of his wife under the pension trust never acquired the character of fixed and enforceable property rights which were susceptible to transfer by him within the meaning of section 811 (c). Cf. *Estate of Emil A. Stake*, 11 T. C. 817.

Moreover, we find no act on the part of the decedent which we think can properly be characterized as a "transfer" of an interest in property. Unlike the purchase of the annuity contracts in the *Wilder*, *Clise*, and *Mearkle* cases, the decedent's participation in the pension plan in-

augurated by his employer was not voluntary. The plan itself nominated the surviving beneficiaries, limiting them to the wife or the minor children of the officer or employee. Decedent, other than by continuing in his employment at the bank, which incidentally he had enjoyed for 13 years prior to the establishment of the plan, had no part in the selection of his wife as a surviving pensioner. Nor did he personally possess any means of defeating her pension rights other than by resigning his position at the bank. Such considerations serve to emphasize the striking dissimilarity between the instant case and the *Nevin* and *Higgs* cases, *supra.*

It is true that the decedent regularly contributed to the pension fund and the pension trust over a period of approximately 30 years, but the fact that rule 5 (a) required unmarried officers and employees to contribute at the same rate and for the same period of time as married officers and employees apparently refutes any inference that the pension which was ultimately paid to the widow stemmed directly from the contributions decedent had made under the plan. The fact that the pension which was paid to decedent's widow was separate and distinct from that of the decedent is further evidenced by the election afforded the decedent under rule 24, which permitted him to take a pension in a lesser amount upon retirement in consideration of an additional amount to be paid to his wife in the event she survived him. This election has been construed by the bank as providing a pension to the widow or children of the pensioner *in addition* to the pension otherwise payable to those persons under rule 17. Unlike the decedent in *Estate of William J. Higgs, supra*, the decedent herein never exercised this option.

The language of our opinion in *Estate of Emil A. Stake*, 11 T. C. 817, 825, is equally expressive of the conclusions we have reached in the instant case, wherein it states:

The cases primarily relied on by the respondent are not helpful here, for they involved joint and survivorship annuities, purchased by the decedent. The holding in those cases, in effect, that the decedent had a property interest and that he conveyed it is soundly based in the fact of purchase of the annuities by him. Here the decedent made only a limited contribution, under a plan limiting his rights as above set forth, resulting, in our view, in no property rights and no transfer.

In our opinion, the respondent erred in increasing the value of the decedent's gross estate by the amount of $25,854.50 representing the commuted value of the pension received by the decedent's widow on the ground that the pension rights of the widow resulted from an *inter vivos* transfer from decedent to his wife to take effect at his death within the meaning of section 811 (c) of the Internal Revenue Code.

*Decision will be entered under Rule 50.*