ESTATE OF M. HADDEN HOWELL, DECEASED, FLORENCE E. HOWELL, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19479. Promulgated September 19, 1950.

225

*Anthony A. Bliss, Esq.*, for the petitioner.
*Lester H. Salter, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* This case involves estate tax. Deficiency was determined in the amount of $19,810.87. Due to concessions made, only a part thereof is in issue. The petition alleges overpayment of $5,635.89.

The question presented is whether the decedent's election on January 21, 1944, to receive retirement annuity payments in reduced amounts, permitting payments to his wife after his death, constitutes a transfer within section 811 (c) of the Internal Revenue Code and, if so, the value of such right. All facts were stipulated. We adopt the stipulation incorporated herein by reference as our findings of fact. So far as considered necessary to discussion of the questions presented, they may be summarized as follows:

Florence E. Howell is executrix of the last will of her husband, M. Hadden Howell, who died on June 17, 1944, a resident of New Jersey. Within due time she filed an estate tax return with the collector of internal revenue for the fifth district of New Jersey, Newark, New Jersey. The return showed a gross estate of $109,656.31, which included $57,036.06 as transfers during decedent's life, that being the value ascribed by the return to the annuity involved in this proceeding. The total tax shown, $5,624.16, was paid $4,150 on April 26, 1945, and $1,474.16 on May 19, 1945; also, $400 was paid January 15, 1946, and $16,000 was remitted on December 28, 1948, and placed by the collector in his suspense account.

M. Hadden Howell, the decedent, was born July 1, 1884, entered the employ of The Chase National Bank of the City of New York on May 8, 1902, and continued therein until his retirement on February 1, 1944. In 1933 the bank adopted a pension or retirement plan for the benefit of its employees which, amended, was in effect the date of decedent's death and is still in effect. The plan provided for annuity benefits underwritten and administered by the Metropoli-

tan Life Insurance Co. The decedent, as an employee, became a subscriber of the plan on July 1, 1933, when there was issued to him Certificate No. 352.[1] He made contributions to the cost of the pension or retirement annuity in the amount of $13,155.75. Certificate No. 352 provided, *inter alia*, that upon receipt by the insurance company of the written request of the employer alone, the retirement annuity payments may be commenced at any time prior to normal retirement date. The decedent's normal retirement date, as stated on the certificate, was February 1, 1949, if he was then living and in the employ of the employer. On January 28, 1944, the bank requested that retirement annuity payments to the decedent commence on February 1, 1944, instead of February 1, 1949, and they were so commenced. The bank on January 28, 1944, remitted to the insurance company $107,-759.60 to cover the payment required by the company. The total payments made by the bank on account of the decedent's retirement annuity contract amounted to $172,734.33. This amount is in addition to the $13,155.75 contributed by the decedent. Certificate No. 352 provided, *inter alia*, for an election by the decedent prior to commencement of retirement annuity payments, and in writing to be accepted by the insurance company, under which he could receive in lieu of the full amount of his retirement annuity, a reduced amount during his further lifetime with a designated amount payable after his lifetime to his designated dependent if surviving during the lifetime of such designated dependent. The decedent made such election on January 21, 1944, electing to receive retirement annuity payments in the reduced amount of $15,065.04 per annum, payable $1,255.42 monthly, with payments to be continued to his wife after his death if she survived him in the amount of $5,250 per annum, payable $437.50 monthly.

On the date of his retirement on February 1, 1944, a new Certificate No. 352 was issued to the decedent certifying his right to receive the $15,065.04 per annum, with payments of $5,250 per annum to his surviving wife, Florence E. Howell, also, providing the refund of $13,155.75, and, further, that the benefits described were nonassignable and that the decedent had the right to change the beneficiary of the guaranteed refund. Florence E. Howell, born June 23, 1888, survived the death of the decedent on June 17, 1944, and is still living. Following the death of the decedent, commencing on July 1, 1944, she received and is now receiving $437.50 monthly pursuant to the new certificate issued to decedent. The decedent prior to his death received annuity payments aggregating $6,277.10. The balance ($6,878.65) of the $13,155.75 contributed by the decedent has been

[1] Thereunder decedent "is entitled to a retirement annuity payable monthly commencing on February 1, 1949 * * * if the employee is then living and in the employ of the employer."

recovered since his death in the form of annuity payments to his widow. No further payments will be made after her death. She has included such annuity payments, to the extent that they exceed the unrecovered cost basis to the decedent, in her income tax returns for the years 1944 to 1948, inclusive. The $57,036.06 included in the estate tax return is with respect to the annuity payable to the decedent's widow, computed under Regulations 105, but does not take into account the value of the initial death benefit of $6,878.65. The Commissioner in the computation of the deficiency included the annuity in the gross estate at a value of $106,909.69.[2] That amount is the cost on June 17, 1944, of an annuity providing payments of $437.50 monthly for life beginning July 1, 1944, for a female born June 23, 1888, if it had been purchased under the insurance company's rates provided for individual purchasers. The decedent would have received $17,096.55 per annum if he had not elected to have his retirement annuity reduced to provide the $5,250 annuity to his wife if she survive him.

Respondent's position in this matter is that the decedent's election on January 21, 1944, to receive retirement annuity payments in reduced amount in order that payments be continued to his wife if she survive him constituted a transfer within section 811 (c) (1) (A) and (B) of the Internal Revenue Code. The petitioner's position, on the contrary, is that the inclusion of a value for the annuity to the widow, in gross estate, was error. Petitioner's prime contention is, in substance, that under section 811 (c) (1) (A) and (B) there must be a transfer of an interest in property, and that on January 21, 1944, the decedent made no such transfer because he then had no vested right to the community benefits he is alleged to have transferred.[3] It is argued that at the time of the election decedent held only an option to choose between several alternate retirement benefits under the pension plan and that such benefits were payable only if the decedent was living and in the employ of the bank on February 1, 1949, his normal retirement date; and that therefore the decedent owned nothing more than an expectancy of receiving benefits, and could not and did not, therefore, transfer any interest in property.

We have examined the various cases cited by both parties and in our opinion the position of the petitioner should be sustained. Cases cited, which involve annuity contracts purchased by the decedent under which he had contractual right at the time of the transfer, are not helpful here. On January 21, 1944, the petitioner had not

[2] That is, he added $49,873.63 to the $57,036.06 which the petitioner, erroneously it is now contended, included in gross estate because of the annuity payable to the widow.

[3] The petitioner specifically concedes that $6,878.65, the unrecovered portion at the date of decedent's death of the $13,155.75 contributed by the decedent to the retirement plan, is includible in gross estate.

fulfilled the requirements of the plan that he remain living and in the employ of the bank until February 1, 1949. The policy or plan specifically stated that he was entitled to the retirement annuity if on that date so living and employed. On January 21, 1944, it seems clear that he had only a hope or possibly an expectancy that rights might accrue to him which he might in part elect to go to the benefit of his widow, but that he had no vested right, or even contingent interest in such retirement benefits except upon the contingency that he continue in the employ of the bank until February 1, 1949. The policy specifically provided for the return of contributions made by him if at the termination of employment he was not receiving or entitled to receive any retirement annuity payments, or if termination was due to death of the employee, and there is no contention here that such contributions purchased the annuity paid to the widow. Though on January 21, 1944, he exercised an option and designated his wife as a beneficiary he had at that time no assurance whatever and no contractual right that any sums other than the contributions be paid either to him or to his nominee. Such rights would accrue to him only on February 1, 1949. The payments made to his widow, and to him from February 1, 1944, until his death, were made only because the plan provided that if the employer made written requests the annuity payments "may be commenced at any time prior to the normal retirement date." In short, without right on the part of the decedent and only because of the generosity on the part of the employer in making such request on January 28, 1944, and paying to the insurance company $107,759.60, did decedent and his widow receive annuity payments. He, having at that time not been employed until February 1, 1949, the time set in the contract, could not have compelled the bank to make such request or such payment. They were entirely within the discretion of the bank. Had he suggested to the bank the advancement of his retirement date, and payment of an annuity either for himself or his widow, he might have met with a refusal or with the suggestion that the bank was willing to pay some much smaller amount, though obliged to pay nothing. We can detect no right at all in the decedent to annuity benefits or the transfer of them to his wife, on January 21, 1944. In *Illinois Merchants Trust Co., Executor, Estate of Edmund D. Hulbert*, 12 B. T. A. 818, Hulbert had paid to the pension fund of a bank compulsory contributions. These were made under and subject to certain rules including the provision that the creation of the pension fund conferred no legal rights upon the employees, conferred no vested rights, and that every pension granted would be at the discretion of the trustees. The rules also provided that, if the pension was refused. the contributor or his representative would be entitled to a refund of the amount contributed. The pension was

paid to the widow. It was held that contributions created no vested right to a pension, did not impose any contractual obligation to pay such a pension, that payment thereof was entirely a matter of choice, and that the only obligation was to pay back the contributions with interest, and that, therefore, the Commissioner erred in including in estate the present value of the pension. Though the pension certificate involved in this case does not contain in words such negation of vested rights as in the *Hulbert* case, it does so in effect for it provides that the decedent "is entitled" to such rights *if* living and in the employer's employ on February 1, 1949.

In *Estate of Emil A. Stake*, 11 T. C. 817, we considered the case of a decedent, an officer in a bank, who was required to contribute to a pension fund to which the bank also contributed. He was entitled to retirement rights after 15 years' service and after arriving at the age of 60 years. His widow was entitled to one-half thereof. The bank, as in the instant case, could in its discretion pay a pension without regard to such rules. Decedent died at 54 years, but after serving 15 years. In substance, the plan provided that in such case the bank might direct payment of pension to the widow or repay the contributions with interest. The widow was paid a pension. As here, the petitioner argued that the decedent never had a property interest in the pension fund and neither transferred property nor retained enjoyment thereof during his life within section 811 (c) of the Code. We said, in substance, that payment to decedent's widow was not by virtue of any right thereto either in her or in him, that it was granted in the discretion lodged in the bank under the plan, nothing more than an expectancy on his part, and held that there was includible in gross estate only the decedent's contribution plus interest. It is, of course, true that in the *Stake* case there was no exercise of an option to provide payment to the wife as a beneficiary but the effect is not different because there the wife was a beneficiary by virtue of the plan itself, and the ground of decision was the discretion in the bank and lack of right in the decedent. We referred to *Dimock* v. *Corwin*, 19 F. Supp. 56. There the court considered an annuity and insurance plan providing for the payment of a death benefit to a designated beneficiary but for no payment if no beneficiary had been designated or if designated had died before the employee, and and though death benefits were neverthelss paid it was held that the value thereof should not be included in gross estate. The plan provided that the benefits were voluntary grants by the company without right in the employee to be retained or to an annuity or death benefit after discharge. The decedent employee had designated his wife as beneficiary and she was paid pursuant to the plan. The court pointed out that the decedent's right to designate the beneficiary was a mere privilege extended to him by his employer, that he had

only the right to render it possible for his wife to receive a grant, that this did not constitute property, and that his act in naming her as recipient of the death benefit was not a transfer of property within section 302 of the Revenue Act of 1926.

In *Estate of Eugene F. Saxton*, 12 T. C. 569, we had a question similar to the one here at hand. The employer created a 10-year trust with monies provided by it for the benefit of employees, including the decedent. In case of his death before 10 years his share was to be paid to the person appointed by his will or, failing such appointment, to his issue. He died prior to the end of the 10 years and without exercising the power of appointment. His share of the trust estate was paid to his children. It was held that the amount was not includible in his estate. We said, in effect, that if the trust had provided certain primary beneficial rights to decedent and had also provided that he should have the power to cut down those rights and thus create rights in his widow or children and he exercised that power we might conclude that the exercise amounted to a transfer by him but, we said, there was no legal obligation upon the employer nor any power granted by the trust or exercised by decedent with which he could or did carve out and transfer a part of his beneficial rights to his widow or issue. Thus, it is seen that though our conclusion was in part based upon the fact that the decedent had done nothing, the primary reason seems to be that there were no rights in him. The same is true here. On January 21, 1944, the decedent had no rights which he could transfer but at the most only hope or expectancy dependent upon the gratuitous and discretionary action of the bank.

The respondent cites in this respect the *Estate of William J. Higgs*, 12 T. C. 280. There the decedent was the absolute owner of an annuity contract paid for by his employer. It is pointed out that the decedent exercised his option to reduce his annuity and that his widow be paid a part for her life, after the employer had paid in the last money. It is thus clear that unlike the instant case the decedent at the time he exercised his option had a vested right. Referring to the fact that the annuity was fully paid up by January 1, 1934, it is said:

> * * * Thereafter the decedent possessed property in the paid-up annuity. He was then of retirement age under the plan * * *. He had a right under the paid-up annuity to receive $21,750 annually during his life. He could have retained all of that right had he so chosen. He exercised an option which he had under the paid-up annuity to surrender the right to receive a part * * * in consideration of the agreement on the part of the insurance company that it would continue to pay $7,000 annually to his wife for her life * * * should she survive him. * * *

This language seems to deny that the decedent in the instant case had the necessary property right at the time he exercised the option on

January 21, 1944, before he reached retirement age and before the employer had paid up the policy.

It is clear, in our opinion, that the decedent had no property right which he could or did transfer on January 21, 1944. The matter being within the discretion, or more accurately the generosity, of the bank, even a hope or expectancy on his part that he or his widow might receive annuities might have been disappointing, had the bank been otherwise disposed—and he would have had no recourse. We conclude and hold that the Commissioner erred in including in the decedent's gross estate the value of the annuity paid to the widow and that the petitioner erred in including in gross estate any amount on that account, except to the extent of the contributions unrecovered at decedent's death.

This conclusion renders superfluous consideration of the other arguments made by the parties.

*Decision will be entered under Rule 50.*