ESTATE OF CHARLES B. WOLF, CHARLES S. WOLF, FRANCES G. WOLF, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58662.   Filed December 12, 1957.

*Ralph F. Fisher, Esq.,* and *Albert G. Blakey III, Esq.,* for the petitioner.

*Stephen P. Cadden, Esq.,* for the respondent.

OPINION.

RAUM, *Judge:* 1. We hold that the Commissioner correctly included in the decedent's gross estate the present value as of the date of death of the amounts payable under the profit-sharing trust and the two pension trust agreements. This result is required either by subsection (a) or subsection (f) of section 811, I. R. C. 1939.[2] At the date of decedent's death he had enforceable vested rights in the three trusts, procured by the rendition of services and by continuing in the employ of the respective corporations. He could be deprived of those rights only by deliberately terminating his employment or being discharged for cause. He had unlimited power to designate or change beneficiaries, and payments to his named beneficiaries were obligatory. The rights thus created were valuable property rights, capable of valuation, and in fact valued by the parties. The decedent's death was the decisive event that resulted in the passage of those rights to the beneficiary. It seems clear to us that they are includible in his gross estate either under the sweeping provisions of section 811 (a) or under the more specific provisions of section 811 (f) (2). Cf. *Estate of William L. Nevin,* 11 T. C. 59.

This case is to be sharply distinguished from cases such as *Dimock* v. *Corwin,* 19 F. Supp. 56 (E. D., N. Y.), affirmed on other issues 99 F. 2d 799 (C. A. 2), 306 U. S. 363, where the employer retained the unfettered right to withdraw or modify the pension plan and where it was thought that the employee's interest could not rise above that of a mere expectancy. Cf. *Estate of Emil A. Stake,* 11 T. C. 817; *Estate of William S. Miller,* 14 T. C. 657; *Estate of M. Hadden Howell,* 15 T. C. 224; *Estate of Albert L. Salt,* 17 T. C. 92. Accordingly, it is a matter of no moment here whether the Treasury correctly or incorrectly determined in G. C. M. 27242, 1952–1 C. B. 160,[3] not to accept *Dimock* v. *Corwin* in the case of a decedent dying after June 30, 1952. For here, the rights of the decedent and his named beneficiary were not subject to any such plenary control by the employer as was present in *Dimock* v. *Corwin.* Nor is the present controversy governed by such cases as *Estate of Eugene F. Saxton,*

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death; * * *

  \*      \*      \*      \*      \*      \*      \*

(f) POWERS OF APPOINTMENT.—

  \*      \*      \*      \*      \*      \*      \*

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 * * *

[3] This ruling modified G. C. M. 17817, 1937–1 C. B. 281, which was regarded as supporting the result in *Dimock* v. *Corwin.*

12 T. C. 569, where the Court rested its decision on the inapplicability of section 811 (c) and (d), and explicitly noted that a different result would be required under section 811 (f). See 12 T. C. at 574. We do not consider whether the decedent herein made a "transfer" under section 811 (c) or (d), because, in our opinion, he had property rights that passed within the meaning of section 811 (a) and in any event he had a general power (created after October 21, 1942) to name a beneficiary with respect to these rights—a power that was in substance a general power of appointment within the meaning of section 811 (f) (2) and (3). He in fact exercised that power, and property rights passed to his wife thereunder at his death. Plainly, this type of situation is covered by subsection (f) (2).

2. Petitioners raise the question whether one-half of the $15,000 policy of life insurance should be excluded from the decedent's gross estate. It was reported in its entirety on the estate tax return. The policy was taken out in 1937 by the decedent. In 1943, after having paid premiums for 7 years, he assigned the policy to his wife. Thereafter, and for the 7 years until his death, the premiums were paid by checks drawn upon her account. Petitioners contend that only that portion of the proceeds allocable to premiums paid by the husband is properly includible in the gross estate. However, it is the Government's position that all of the premiums were paid by the husband, "directly or indirectly," and that therefore the entire proceeds were correctly reported on the return. Sec. 811 (g) (2), I. R. C. 1939.[4]

The burden of proof was on petitioners. In response to leading questions of petitioners' counsel the wife testified that she paid premiums from her "own personal funds." However, it is by no means clear what she meant by her "own personal funds." Her testimony in general was vague and unconvincing, and it is quite possible that she may have regarded as her own personal funds any money that her husband may have given her to be used for the purpose of paying the premiums. Moreover, on cross-examination, the matter was left highly in doubt. Respondent's counsel asked her whether her husband had given her money with which to pay the premiums, and she replied evasively that he had given her money gifts through the year

---

[4] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(g) PROCEEDS OF LIFE INSURANCE.—

\* \* \* \* \* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

"to pay bills with, etc." No effort was made to clarify the situation by means of redirect examination. Bearing in mind the burden of proof, we cannot find on this state of the record that the husband did not pay all of the premiums "directly or indirectly," and we must therefore rule in favor of the Commissioner on this issue.

3. We reject the Government's contention that the debts reflected in the notes set forth in our findings may not be allowed as a deduction from the gross estate because they were not bona fide.[5] Although the matter may not be completely free from doubt, we are reasonably satisfied that the widow and four children owned interests in the Alloy Rods and Superior enterprises, that these businesses made distributions to each of them, that the funds thus distributed were made available to the decedent, and that the notes executed by him reflect loans of such funds to him. This is not to say, however, that the deduction must automatically follow. If the claim is unenforceable at the date of death, the deduction cannot be allowed. A claim which is unenforceable under State law by reason of the running of the statute of limitations is not deductible. *Wolfsen* v. *Smyth*, 223 F. 2d 111 (C. A. 9); *Brown* v. *United States*, 37 F. Supp. 444 (Ct. Cl.). Therefore, we must examine Pennsylvania law in this connection.

In Pennsylvania, a suit on a demand note is barred 6 years after execution. Pa. Stat. Ann. tit. 12, secs. 31, 36 (Purdon). The most recent notes involved herein are dated November 29, 1944, and the decedent died January 8, 1951. Accordingly, suits on the notes were barred at the date of death, unless the payees were under a disability that suspended the running of the period of limitations. See Pa. Stat. Ann. tit. 12, sec. 35 (Purdon). And the only disabilities that suggest themselves as having any relevance are coverture of the decedent's wife and the possible minority of his children. As to the wife, coverture no longer appears to be regarded as a disability in Pennsylvania in connection with claims of this character. *Turner* v. *Turner*, 169 Pa. Super. 120, 82 A. 2d 320.

As to the children, we are satisfied that Frances and Charles had attained their majority more than 6 years prior to decedent's death. While no direct evidence was presented as to their ages, the evidence shows that Frances, the oldest daughter, had entered the Women's Army Corps in February 1943, and that Charles had been graduated from college and entered the Army in June or July 1943. In these circumstances, we have found as a fact that Frances and Charles each

---

[5] Section 812 (b) of the Internal Revenue Code of 1939 provides that the net estate "shall be determined * * * by deducting from the value of the gross estate * * * such amounts * * * for claims against the estate * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered," and further that "the deduction * * * allowed in the case of claims against the estate * * * shall, when founded upon a promise or agreement be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth * * *."

had attained majority more than 6 years prior to decedent's death. The Pennsylvania statute of limitations had therefore run as to the notes payable to decedent's wife and to the two older children.

A different situation exists with respect to the two younger children. The record discloses that Jessie was born in 1925 and Mary in 1933. Mary was a minor at the date of her father's death and Jessie had attained her majority somewhat less than 6 years prior thereto. Their claims were not barred and we know of no reason why they should not be deductible. Nor are we aware of any basis upon which to deny deductions for interest with respect to their claims which had accrued up to the date of death.

*Decision will be entered under Rule 50.*