ESTATE OF WILLIAM E. BARR, DECEASED, FRANCES M. BARR, EX-ECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 88247. Filed May 3, 1963

*Thomas C. Taylor*, for the petitioner.
*Edward H. Hance*, for the respondent.

PIERCE, *Judge:* Respondent determined a deficiency in estate tax against the estate of William E. Barr, in the amount of $662.98. The issues presented for decision are whether the following items are includable in the decedent's gross estate, under either section 2033 or under section 2039 of the 1954 Code:

(1) The amount of $4,512.18, representing a so-called "wage dividend" death benefit; and

(2) The amount of $1,742.31, representing a so-called "salary" death benefit.

The characteristics and attributes of the foregoing amounts will appear in our Findings of Fact.

FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference.

The petitioner, Frances M. Barr, is the duly qualified and acting executrix of the estate of William E. Barr (hereinafter called the decedent), under letters testamentary granted by the Surrogate's Court of Monroe County, N.Y. Petitioner filed a Federal estate tax return on behalf of the decedent's estate with the district director of internal revenue at Buffalo, N.Y.

Decedent died testate at Rochester on March 30, 1957. At the time of his death, and for 28 years prior thereto, he had been continuously employed by the Eastman Kodak Co. at Rochester.

In or about the year 1912, Eastman had inaugurated a practice of paying to its employees a yearend "wage dividend," in recognition of their loyalty and services to the company. Each year in November, Eastman's board of directors held a meeting; and if at said meeting they declared a cash dividend payable to the holders of its common stock, the directors had been authorized and empowered by the stockholders to declare a "wage dividend" to be paid to eligible employees, if in the discretion of the directors, the cash position and the earnings and profits of the company would permit it. In general, such wage dividend was computed at a percentage of the wages and salaries received by an employee over the 5 preceding years. The wage dividend was payable to those Eastman employees who were on the payroll of the company on the last day of its fiscal year;[1] and it was actually paid to them in March of the year following its declaration.

Eastman paid a wage dividend to its employees in every year from 1912 through 1961, with the exception of 1934, when its directors determined that the company's earnings and profits were not sufficient, notwithstanding that a cash dividend was paid to its stockholders for said year.

To be eligible for a wage dividend, an Eastman employee had to be alive and employed by the company on the last day of the Kodak year. The company's policy with regard to payment of death benefits

---

[1] Eastman used a fiscal year composed of 13 4-week periods, which ended on varying dates within the last 10 days of December. Such fiscal year is referred to in the exhibits and the testimony in the instant case, and it will be referred to hereinafter, as the "Kodak year." The Kodak year 1957 ended on December 29, 1957.

in lieu of a wage dividend to the survivors or the estate of an employee who died during the year, was stated in certain "Rules of Eligibility and Participation," and also in a pamphlet prepared by the company and distributed to its employees. Said Rules of Eligibility and Participation provided, so far as here material, as follows:

*If before qualifying* an employee died in the Kodak year 1957 prior to 11:59 P.M., December 29, 1957, and was not survived by a spouse, child or parent still living at 11:59 P.M., December 29, 1957, *the company may, at its option, pay a wage dividend to the estate or other beneficiary that the officers may select.* The wage dividend should not be calculated until the officers of the company have approved the payment. At this time an addition sheet shall be completed and forwarded to the Employee Benefits Department for approval before writing the check. *If an employee died after* 11:59 P.M., December 29, 1957, *having qualified* for a wage dividend, but before receiving the wage dividend, a wage dividend is paid to the estate as a matter of right. (Emphasis supplied.)

The above-mentioned pamphlet for Eastman's employees provided, so far as relevant to the issue here involved, as follows:

### Other Payments in Case of Death

In addition to any group life insurance which may be payable, the immediate survivors of Kodak people *may expect* certain other payments made by the Company. These are (1) an amount equal to the wages or sickness allowance applicable to the balance of the pay period in which death occurred [2] and (2) an amount equal to the Wage Dividend that would have been paid in the year following death if the individual had lived to qualify under any of the rules which would have entitled him to a Wage Dividend. These payments are made to the husband or wife, if living; otherwise to the children in equal amounts; or to the surviving parent or parents if there are no children. In the event that none of the foregoing were living on payment date but were living at the end of the preceding year, the payment will be made to some other beneficiary. [Emphasis supplied.]

The company's practice as reflected in the preceding quotation was adopted in 1932, and had in most cases been adhered to since that time. Before actual payment of a sum equivalent to a wage dividend to the survivor of a deceased employee, Eastman's board of directors caused an investigation into the circumstances of the deceased employee's family; and if the board was satisfied that the circumstances justified payment of a wage dividend death benefit, they would usually, but not always, approve payment of an amount equivalent to the wage dividend the employee would have received if he had lived and otherwise qualified therefor. As a result, in some instances wage dividend death benefits were not paid. Also, the board of directors from time to time made changes in the eligibility rules for wage dividends. For example in 1956, the board adopted a rule that those employees whose compensation was more than $45,000 per year were not eligible for wage dividends.[3]

---

[3] This amount is the so-called "salary" death benefit, which is mentioned in our statement of the issues, *supra.* Said amount is more particularly described herein.

[8] Decedent's salary at the time of his death was less than $45,000 per year.

In instances where creditors of Eastman employees sought to levy attachments on wage dividends, the company has not honored such attachments unless levied after the end of its fiscal year, and after the company's liability to pay a wage dividend had become fixed.

On November 19, 1957, approximately 8 months after decedent's death, Eastman's board of directors adopted a resolution authorizing the payment of a wage dividend to those Eastman employees who would be on the payroll of the company on December 29, 1957 (a date subsequent to decedent's death), with actual payment to be made in March 1958. And then, at a date not shown by the record, the directors approved payment of a wage dividend death benefit to decedent's surviving spouse. Thereafter, in March 1958, approximately 1 year after decedent's demise, Eastman paid to Frances Barr, his surviving spouse, the sum of $4,512.18, which sum was equal to the amount that decedent would have received as a wage dividend if he had lived and had otherwise qualified therefor. On its books of account, Eastman set up a liability at the end of Kodak year 1957 for said amount which it subsequently paid to Frances Barr, in an account designated "Miscellaneous Payables—Accrued Death Benefits." Eastman had not insured itself under any policy against the payment so made to decedent's widow, nor had it created any fund of its own, from which to make such a payment.

No surviving spouse or relative or executor or administrator of a deceased employee has attempted to enforce a claim against the company for the payment of a wage dividend death benefit, and the company does not consider that any such claim would be enforceable. There have been no assignments or purported assignments of a wage dividend death benefit.

The decedent did not name or designate a beneficiary to receive any wage dividend death benefit that the board of directors might approve for payment in the event of decedent's death prior to qualifying for any wage dividend that said directors might have declared in 1957.

Other than as contained in the above-mentioned Rules of Eligibility and Participation and in the pamphlet distributed to all of Eastman's employees, there was no plan, arrangement, understanding, contract, or agreement between Eastman and decedent, relating to the payment of a wage dividend death benefit.

The second death benefit amount involved in the instant case is the so-called salary death benefit. Decedent's death on March 30, 1957, occurred at the end of the first week of Eastman's fourth 4-week period in Kodak year 1957. Thereafter, on April 2, 1957, the company paid to the decedent's surviving spouse, Frances Barr, the sum of $1,742.31, which was equal to the amount that would have been paid to decedent as salary, if he had lived and continued to be employed by Eastman

for the remaining 3 weeks of the pay period in which he died. The company charged the payment to an account on its books, designated "Death Benefit Expense."

Decedent's estate was paid in full by Eastman for the services which he had rendered to that company up to the date of his death.

As was the case with the wage dividend death benefit hereinabove described, a salary death benefit was not paid in the case of every employee who died. Such payments were made only after investigation by the company into the circumstances of the deceased employee's family. Also as has been found with respect to said wage dividend death benefit, the decedent made no contribution of his own funds for the salary death benefit; nor did the company insure against having to make such payment, or create any fund of its own from which to make such a payment. Moreover, no surviving spouse, or relative, executor, or administrator of any deceased employee has ever attempted to enforce a claim against Eastman for the payment of a salary death benefit; nor does the company consider that any such claim would be enforceable.

Other than as set forth in the above-described employees' pamphlet, there was no plan, arrangement, understanding, contract, or agreement between Eastman and the decedent, relating to the payment of a salary death benefit.

When the executrix of decedent's estate filed the above-mentioned Federal estate tax return, she did not include the amount of either the wage dividend death benefit or the salary death benefit, in the decedent's gross estate as reported on said return.

The respondent, upon audit of said estate tax return, determined that the amount of each of said death benefits was includable in the decedent's gross estate, under the provisions of sections 2033 and 2039 of the 1954 Code.

## OPINION

### I

The first issue relates to the so-called wage dividend death benefit which Eastman Kodak Co. paid to decedent's widow in March 1958 (approximately 1 year after decedent's death). And the question presented with respect to this, is whether the amount of such payment is includable in the gross estate of the decedent for Federal estate purposes, under either section 2033 or section 2039 of the 1954 Code.

As regards section 2033, its provisions, in toto, are as follows:

SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property (except real property situated outside of the United States), to the extent of the interest therein of the decedent at the time of his death.

It will be observed that this section relates only to *interests in property* which the decedent had at the time of his death. And, as the Supreme Court pointed out in the leading case of *Knowlton* v. *Moore*, 178 U.S. 41, the justification for the Government's power to subject such interests to the Federal estate tax rests on the principle that such interests *pass* from the decedent at death, and that the estate tax is an excise tax on the privilege of transmitting property at death to the survivors of the decedent. To the same effect see *New York Trust Co.* v. *Eisner*, 256 U.S. 341.

It is our opinion that, in the present case, the decedent did not have at the time of his death any property interest, either in the "wage dividend" which Eastman's board of directors subsequently declared for the benefit of its living eligible employees (after it had declared a cash dividend for the benefit of its stockholders), or in the related death benefit which these directors then authorized to be paid to decedent's widow. Accordingly, there was no such interest which passed, or could have passed, from him to his widow; and hence no such interest upon which the excise tax on the privilege of transmitting property at death may be imposed under section 2033.

Both this Court and others have recognized that there is a distinction between *rights* of an employee to death benefits, and, on the other hand, mere hopes and expectancies on the part of an employee that death benefits may be paid. Thus, in the early case of *Dimock* v. *Corwin*, 19 F. Supp. 56 (E.D.N.Y.), affirmed on other issues 99 F. 2d 799 (C.A. 2), affd. 306 U.S. 363, it was shown that the Standard Oil Co. had adopted an annuity and insurance plan, subject to withdrawal or modification by Standard at its discretion, under which death benefits roughly equal to a year's salary of an employee might be paid to the widow of a deceased employee. The District Court concluded that the decedent had "only the right to render it possible for [his surviving spouse] to receive a grant from the Standard Oil Co., and that this did not constitute property of his" under the then applicable statute, section 302 of the Revenue Act of 1926, a statutory provision cognate to section 2033 of the 1954 Code.

In a more recent case decided by this Court, *Estate of Albert L. Salt*, 17 T.C. 92, the facts were closely similar to those of the instant case. There, the decedent was employed by Graybar Electric Co., which had a "Plan for Employees' Pensions, Disability Benefits and Death Benefits," under section 7 of which it was provided that the company could, in the discretion of a committee appointed by the company to administer the plan, authorize death benefit payments to the wife, husband, or dependent relative of a deceased pensioner of the company. The company paid a death benefit to decedent's widow of $40,000. The company had paid similar death benefits in every case over a 15-year period, where there had been a qualified beneficiary

of a deceased pensioner. We held that the respondent had erred in including said $40,000 in the decedent's gross estate; and we stated in part as follows:

At the time of his death decedent had no vested interest in the $40,000 nor did his widow have an enforceable right to the $40,000. Whether she would receive it was entirely within the discretion of the committee administering the Plan. Since the decedent's "interest" in the $40,000 was a mere expectancy that his widow would receive the payment, it is not includible as a part of his gross estate under section 811(a) of the Code. See *Dimock* v. *Corwin*, * * * [17 T.C. at 100]

Cases to the same effect are *Estate of Emil A. Stake*, 11 T.C. 817; *Estate of William S. Miller*, 14 T.C. 657; *Estate of M. Hadden Howell*, 15 T.C. 224.

Authorities reaching differing results on the basis of the decendents having *enforceable vested* rights to have their employers pay death benefits to survivors, are typified by *Estate of Charles B. Wolf*, 29 T.C. 441, 447, in which case we stated:

At the date of decedent's death he had *enforceable vested* rights in the three trusts [one profit-sharing trust, and two pension trusts], procured by the rendition of services and by continuing in the employ of the respective corporations. He could be deprived of those rights only by deliberately terminating his employment or being discharged for cause. He had unlimited power to designate or change beneficiaries, and payments to his named beneficiaries were obligatory. The rights thus created were valuable property rights, capable of valuation, and in fact valued by the parties. The decedent's death was the decisive event that resulted in the passage of those rights to the beneficiary. It seems clear to us that they are includible in his gross estate either under the sweeping provisions of section 811(a) or under the more specific provisions of section 811(f)(2) [dealing with powers of appointment]. Cf. *Estate of William L. Nevin*, 11 T.C. 59.

This case is to be sharply distinguished from cases such as *Dimock* v. *Corwin*, * * *, where the employer retained the unfettered right to withdraw or modify the pension plan and where it was thought that the employee's interest could not rise above that of a mere expectancy. * * * [Citing the *Salt*, *Stake*, *Miller*, and *Howell* cases, *supra*.] [Emphasis supplied.]

We are convinced that in the instant case, decedent had no more than a hope or expectancy that his surviving spouse might receive a wage dividend death benefit. There were so many events that had to occur before such hope could be realized that we find it impossible to conclude that, at the date of death, he had any property right which he could pass to her. Eastman had to realize earnings and profits for the year 1957; the directors, in the exercise of their discretion, had to declare a dividend to its stockholders; the directors, in further exercise of their discretion, had to declare a wage dividend payment to those employees who were alive and employed by the company on the last day of the Kodak year; and the directors, in the still further exercise of their discretion, had to approve a wage dividend death benefit to the widow of the instant decedent who had theretofore died.

234

Moreover, the company, in its Rules of Eligibility and Participation and in the pamphlet distributed to its employees, made it clear that whether it might approve a wage dividend death benefit to the estate or beneficiary of a deceased employee was solely within its "option"; and that such situation would be distinguishable from that of an employee who had continued to live until after the close of the Kodak year for which the wage dividend was declared, and who thereby had acquired a "right" to the same.

We hold that section 2033 is not here applicable.

We turn next to the question of whether section 2039 reaches the wage dividend death benefit here involved. The relevant provisions of this section are as follows:

SEC. 2039. ANNUITIES.

    (a) GENERAL.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

    (b) AMOUNT INCLUDIBLE.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

These provisions were new in the 1954 Code. Under the prior 1939 Code, there were no provisions specifically applicable to annuities or other types of payments made under pension, profit-sharing, or retirement plans of employers. Hence under that Code, the taxability of annuities or such other payments had to be determined by reference to the general provisions of section 811—particularly those in sections 811(c)(1)(B) and 811(c)(1)(C) which pertained to transfers with possession or enjoyment retained, and transfers intended to take effect in possession or enjoyment at or after death. Also, Congress recognized in its drafting of the bill that became the 1954 Code, that it was not clear under existing law whether a joint and survivor annuity purchased by the decedent's employer (as distinguishable from one purchased by the decedent) or an annuity to which both the decedent and his employer made contributions, was includable in the decedent's gross estate. See S. Rept. No. 1622, 83d Cong., 2d Sess., p. 123. Thus, section 2039 was added to the estate tax by the 1954 Code

in an effort to supply a satisfactory system for taxing employee death benefits. It is significant that all six of the illustrative examples of applicability set forth in Treasury regulations, section 20.2039-1(b) (2), relate either to an annuity contract purchased by the decedent, or to annuities payable pursuant to a retirement plan under which the employer made contributions to a fund for the benefit of its employees. We think that in considering the intent and applicability of section 2039, it is important to keep the foregoing in mind.

Examination of the above-quoted provisions of section 2039 makes it clear that the applicability of this section is contingent upon certain requirements being met. Included among these requirements are the following:

1. The *survivor* of the decedent must have become entitled to an annuity or other payment under some form of "contract or agreement entered into after March 3, 1931." (The significance of this latter date is that it is the date of the joint resolution under which "transfers with retained life estate" were made subject to estate tax. See sec. 2036 (a) and (b), 1954 Code.)

2. Under such contract or agreement, the *decedent*, himself, at the time of his death, must either (a) actually have been receiving payments thereunder, or (b) must have "possessed the right to receive" such payments, "either alone or in conjunction with another," for his life or for any period not ascertainable without reference to his death or for any period which did not in fact end before his death. (Here again, it is significant that the words beginning with "for his life" are identical with similar provisions of section 2036, that relate to "Transfers with Retained Life Estate.")

3. Under section 2039(b), the only part of the survivor's benefits which is taxable to the decedent's estate, is an amount proportionate to the decedent's contributions to the purchase price of the contract or agreement. However, any contributions of the employer toward the "purchase price of such contract or agreement," are attributable to the decedent if made by reason of the latter's employment.

The repeated reference (in both subsections (a) and (b)) to the requirement for some form of contract or agreement, indicates that the rights of both the decedent and the survivor must be enforceable rights; and that voluntary and gratuitous payments by the employer are not taxable under section 2039. This is expressly recognized in example (4) of the regulations. However, this same example does state that where the terms of an enforceable retirement plan have been modified by consistent practice of the employer, the annuity received pursuant to such modification will be considered to have been paid under a "contract or agreement." We do not think that the latter statement was intended to mean that where there was no enforceable arrangement, contract, or agreement whatever, the mere

consistency of an employer in making voluntary or gratuitous payments would be sufficient to supply the essential "contract or agreement." Congress, for reasons satisfactory to it, has made the existence of some form of "contract or agreement" an indispensable prerequisite to the application of section 2039.

In the instant case, as we have hereinbefore found, there was no express contract entered into between decedent and Eastman, under which his widow would be entitled to receive any wage dividend that the board of directors might declare subsequent to his death. And the creation of any contract by implication is negatived, not only by the fact that Eastman did not pay a wage dividend death benefit to the survivors in every case, but also by the fact that its rules for participation made it clear that employees who died before the end of the Kodak year would receive benefits only at the company's option—as distinguished from employees who survived until after the close of the Kodak year, and thereby became entitled to have the wage dividend paid to their estates or survivors "as a matter of right."

We have found only three decided cases in which the applicability of the newly enacted section 2039 was given consideration: *Bahen's Estate* v. *United States*, 305 F. 2d 827 (Ct. Cl.) ; *Estate of Wilmar Mason Allen*, 39 T.C. 817 (1963) ; and *Estate of Edward H. Wadewitz*, 39 T.C. 925 (1963). We regard all of these cases to be clearly distinguishable.

In the *Bahen* case, the widow, after Bahen's death, received death benefit payments from the decedent's former employer, the Chesapeake & Ohio Railway, under two employee plans which the Court of Claims deemed to be merely parts of one coordinated plan. The more significant portion of this arrangement, which was designated the "Deferred Compensation Plan," had been adopted by the company for 40 of its officers and executives. Under this plan, at Bahen's death, the company was to pay a stated sum of $100,000 to his widow or to his surviving minor children; and if Bahen became totally incapacitated prior to retirement, the company would make payments to him in 60 equal monthly installments so long as he survived, with any unpaid installments going to his widow or minor children. Pursuant to the plan, the president of the company was to notify each officer covered by the plan of the benefits payable to him and was also "to represent that the Plan is irrevocable, not subject to later withdrawal by the Board [of directors], and represents a firm commitment on the part of the Company to extend benefits in accordance with the terms and conditions herein set forth." Bahen was immediately notified of this Deferred Compensation Plan and its irre-

vocability. The Court of Claims concluded that this compensation plan, which was made irrevocable and was communicated to the employee, fell directly within the definition of a "contract or agreement" under section 2039. In the instant case, there was no expressed and irrevocable arrangement, understanding, contract, or agreement of the Eastman Co. which represented a firm commitment on the part of that company to extend benefits to the decedent's widow.

In the *Allen* case, it was not disputed that there was a contract or agreement which fell within the provisions of section 2039; and the only dispute was as to the value of the benefits which were taxable.

In the *Wadewitz* case likewise, there was a written contract or agreement, under which the decedent himself was entitled to receive certain benefits during life, and his widow was to receive benefits after his death; and the only issue was whether section 2039 was inapplicable because the decedent's rights were alleged by the estate to be forfeitable under certain conditions. We held, however, that the decedent's rights were nonforfeitable; and accordingly that the provisions of section 2039 applied to the concededly existing contract.

On the basis of all the foregoing, we hold that the wage dividend death benefit here involved is not includable in the decedent's gross estate under either section 2033 or section 2039.

## II

The second issue is whether the salary death benefit which was paid to the decedent's widow is includable in the decedent's gross estate, under either of the above-mentioned sections, 2033 or 2039.

It is our opinion that what we have stated with respect to each of these sections in our consideration of the wage dividend death benefit is equally applicable to this salary death benefit. Moreover, as regards section 2039, it is clear that the decedent himself could not reduce to possession, either immediately or *in futuro* at any time during his life, any death benefit payment. Hence there is here a failure to meet one of the essential requirements of section 2039, that the decedent must possess for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death, the right to receive an annuity or other payment, either alone or in conjunction with another person or persons. See Estate Tax Regs., sec. 20.2039–1(b)(ii).

We decide this second issue also in favor of the petitioner.

*Decision will be entered for the petitioner.*